John R. BOVIO, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

No. 91–3202.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1992.

Decided March 25, 1993.

---

Jeffrey B. Steinback, Leonard Goodman (argued), Genson, Steinback, Gillespie & Martin, Chicago, IL, for petitioner-appellant.

Colleen D. Coughlin, Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Diane MacArthur (argued), Chicago, IL, for respondent-appellee.

Before KANNE and ROVNER, Circuit Judges, and REYNOLDS, Senior District Judge.[1]

REYNOLDS, Senior District Judge.

 The magistrate judge found probable cause to extradite appellant John Bovio ("Bovio"), a United States citizen, to Sweden. Pursuant to Title 28 United States

---

1. The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

Code § 2241, Bovio petitioned the United States District Court, Northern District of Illinois, Eastern Division ("district court"), for a writ of habeas corpus, challenging the magistrate judge's finding of probable cause.[2] The district court denied Bovio's petition, which denial Bovio appeals. For the reasons discussed below, we affirm the district court.

## I. PROCEDURAL BACKGROUND

On July 18, 1986, the Stockholm Prosecution Authority issued an International Warrant for Bovio's arrest. Bovio is charged with smuggling amphetamines from Holland to Sweden in December 1985, and from the Netherlands to Sweden in March 1986. On May 23, 1990, appellee United States of America ("the government") filed an extradition complaint at the Swedish government's request. On January 11, 1991, following extradition proceedings pursuant to 18 U.S.C. § 3184, the magistrate judge denied Bovio's certification for extradition. On February 4, the government filed a motion to reconsider, submitting two additional documents, a statement by Stockholm public prosecutor Lars Vasthagen and a sworn statement by Detective Inspector Ali Lindholm of the Stockholm Police District. On April 3, 1991, the magistrate judge certified Bovio to the Secretary of State to be surrendered to the Swedish government for prosecution.

## II. ANALYSIS

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 2253, which provides that a final order issued by a district judge in a habeas corpus proceeding is subject to review by the United States Court of Appeals for the circuit in which that district court is situated. The issues presented by Bovio to this court are whether (1) there is sufficient evidence to support a finding of probable cause for his extradition; (2) the documents submitted by the government on reconsideration were

admissible; and (3) his due process rights have been violated.

Title 18 United States Code § 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. Such complaint may be filed before and such warrant may be issued by a judge or magistrate of the United States District Court for the District of Columbia if the whereabouts within the United States of the person charged are not known or, if there is reason to believe the person will shortly enter the United States. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

The United States entered into a bilateral treaty of extradition with Sweden which became effective December 3, 1963 ("the Treaty"). *See* Convention on Extradition

---

**2.** Extradition rulings are not directly appealable; one may challenge an extradition ruling by filing a petition for a writ of habeas corpus.

*Collins v. Miller,* 252 U.S. 364, 369, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920).

Between the United States of America and Sweden, Oct. 24, 1961, U.S.–Swed., 14 U.S.T. 1845. The Treaty was updated by the Supplementary Convention on Extradition Between the United States of America and the Kingdom of Sweden, Mar. 14, 1983, U.S.–Swed., T.I.A.S. No. 10812 ("the Supplementary Convention"), which became effective on September 24, 1984.

## A. Probable Cause to Extradite

Article XI of the Supplementary Convention provides:

(1) The request for extradition shall be made through the proper diplomatic channel.

(2) The request for extradition shall be accompanied by:

(a) a statement as to the identity and probable location of the person sought;

(b) a statement of the facts of the case, including, if possible, the time and location of the crime;

(c) the provisions of the law describing the essential elements and the designation of the offense for which extradition is requested;

(d) the provisions of the law describing the punishment for the offense; and

(e) the provisions of the law describing any time limit on the prosecution or the execution of punishment for the offense.

(3) A request for extradition relating to a person who is sought for prosecution also shall be accompanied by:

(a) evidence providing probable cause to believe that the person sought is the person to whom the warrant or decision of arrest refers;

(b) a certified copy of the warrant of arrest, issued by a judge or other competent judicial officer with respect to a request emanating from the United States, or a certified copy of the decision of arrest (häktningsbeslut) issued by a judge or other competent judicial officer with respect to a request emanating from Sweden, and such supplementary documentation as provides probable cause to believe that the person sought committed the offense for which extradition is requested. Such a warrant or decision of arrest and supplementary documentation shall be recognized as sufficient grounds for extradition, unless, in a specific case, it appears that the warrant or decision of arrest is manifestly ill-founded.

. . . .

(5) Documents transmitted through the diplomatic channel shall be admissible in extradition proceedings in the requested State without further certification, authentication or other legalization.

(6) The documents in support of the request for extradition shall be accompanied by a duly certified translation thereof into the language of the requested State.

Before Bovio can be certified for extradition, a court must find probable cause under federal law that he committed the offense he is charged with by the Swedish government. *See Eain v. Wilkes*, 641 F.2d 504, 507–508 (7th Cir.), *cert. denied*, 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). The magistrate judge concluded that there was probable cause to extradite Bovio. We review the magistrate judge's finding of probable cause to determine whether there is any competent evidence to support her finding. *Matter of Assarsson*, 635 F.2d 1237, 1246 (7th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981); *Eain* at 509.

The Swedish authorities allege the following. Bovio arrived in Stockholm in December 1985, where he stayed with his girlfriend, Nicole Waerner ("Waerner"), who lived with her mother Barbro Stigsdotter–Sherrer. During that time, Solja Perttunen ("Perttunen") smuggled a wooden case containing amphetamines from Amsterdam to Stockholm for her boyfriend Shaul Ivzi ("Ivzi"). When Perttunen arrived in Stockholm, she called a phone number given to her by Ivzi to contact Bovio regarding drop-off of the case. Perttunen delivered the case to Bovio at Waerner's home. Approximately one week later, Ivzi and Perttunen picked up two wooden cases from Bovio.

In March 1986, Bovio arrived in Stockholm with a similar wooden case. At Pert-

tunen's home, Bovio and Perttunen removed the drugs from the case and hid them in an armchair. Bovio returned to Amsterdam the next day. Bovio sold some of the drugs in both Stockholm and northern Sweden.

The government's crucial submission is Lindholm's statement which the magistrate judge reviewed on reconsideration. Lindholm investigated and interrogated witnesses regarding the events which led to the arrest warrant for Bovio. In his sworn statement, Lindholm attests that Perttunen named Bovio as a courier for Ivzi, and produced a photograph which she had taken showing Bovio sitting in the chair in which she and Bovio had hidden drugs in March 1986.

Bovio argues that (1) Lindholm's statements do not indicate how he obtained the information on which the statements are based, whether witnesses were under oath, and whether there are any original notes or recordings of witness interviews; (2) all the evidence implicating Bovio is hearsay; (3) there is no physical evidence implicating Bovio; and (4) the major witness relied upon by the Swedish government, Perttunen, has admitted lying during the investigation, and there is otherwise no corroboration of her account.

■■■ An extradition proceeding is not a trial, but rather is similar to a preliminary hearing. *David v. Att'y Gen. of United States*, 699 F.2d 411, 415 (7th Cir.), *cert. denied*, 464 U.S. 832, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983); *Eain* at 511. Accomplice testimony can be used to find probable cause, *Eain* at 510, and hearsay testimony is often used in extradition hearings. *Collins v. Loisel*, 259 U.S. 309, 317, 42 S.Ct. 469, 472, 66 L.Ed. 956 (1922); *cf.* Fed.R.Crim.P. 5.1(a) ("The finding of probable cause [at a preliminary examination] may be based upon hearsay evidence in whole or in part.").[3] There is no argument that any of Perttunen's recanted statements are relevant to Bovio. Additionally, Bovio has no right to attack the credibility of either Lindholm or Perttunen at this

stage of the proceedings; issues of credibility are to be determined at trial. *Eain* at 511.

Lindholm states that

Solja Perttunen's story is corroborated by the following, among other things.

Her travelling to Saltsjo Boo and delivering the attache case to John Richard Bovio is corroborated by Nicole Waerner's statement, describing the same event. In addition to Perttunen's story, she also says that she had seen some of the drugs in the case which was delivered to John. She was also invited to sample them. In her statement, Nicole Waerner also described a journey which John is said to have made to Norrland (Northern Sweden) with a view to selling drugs. Moreover, in the photograph of John sitting in the black armchair, she recognized him as the John who stayed in her home just before Christmas 1985 and was called "Bakteria."

Her mother, Barbro Stigsdotter-Sherrer, also remembers John visiting them.

Concerning the event of 1st March 1986, Perttunen's story is corroborated by an excerpt from the return air ticket to Amsterdam, which was in John Richard Bovio's name.

. . . .

It should also be added that, in addition to Ivzi and Perttunen, Robyn Tooth has also been convicted, following extradition from Amsterdam in the Netherlands, as an accomplice and that, when questioned, she furnished information similar to Perttunen's concerning what had happened.

(Jan. 5, 1991 Lindholm Statement (translated) at 2–3.) Bovio's attorney conceded during the November 10, 1992 oral argument that a portion of Perttunen's statements regarding the events which took place in 1985 was corroborated by Waerner.

Bovio contends that there is no competent evidence to support a finding of probable cause because Lindholm's statement was made five years after the investigation

---

**3.** The Federal Rules of Evidence and the Federal Rules of Criminal Procedure do not apply to extradition proceedings. Fed.R.Evid. 1101(d)(3); Fed.R.Crim.P. 54(b)(5).

and there is no record of original notes from witness interviews. Such arguments, however, go to credibility. Based upon our review for any competent evidence to support the magistrate judge's decision, we conclude that the magistrate judge's finding of probable cause is proper.

B. Documents Submitted on Reconsideration

18 U.S.C. § 3190 ("§ 3190") states:

[P]apers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence ... if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Bovio argues that the documents submitted by the government on reconsideration are inherently suspect, and that such suspicion is compounded by the fact that they were not certified pursuant to § 3190.

■ While certification is conclusive proof that documents are admissible, *Theron v. U.S. Marshal,* 832 F.2d 492, 502 (9th Cir.1987), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988), it is not the exclusive means of authentication. *See e.g., Matter of Extradition of Artukovic,* 628 F.Supp. 1370, 1376 (C.D.Cal.1986), *stay denied,* 784 F.2d 1354 (9th Cir.1986). Section 3190 does not purport to be the only means by which a document is admissible in extradition proceedings. Article XI(5) of the Supplementary Convention provides that:

[d]ocuments transmitted through the diplomatic channel shall be admissible in extradition proceedings ... without further certification, authentication or other legalization.

In a June 30, 1984 report from The Committee on Foreign Relations to the Senate recommending ratification of the Supplementary Convention, Article XI(5) is discussed:

[S]ince documents submitted through the diplomatic channel in connection with extradition requests have as great indicia of reliability as extradition documents authenticated in accordance with the unnecessarily complex and questionable United States statutory provision on the subject, 18 U.S.C. § 3190, paragraph 5 makes such documents admissible in extradition proceedings in the United States without further certification, authentication or other legalization.

(S.Exec.Rep. No. 27, 98th Cong., 2d Sess. 5–6 (1984).) Bovio does not claim that Article XI(5) was not complied with. We conclude that the documents submitted by the government on reconsideration were admissible.

*Due Process*

■ Bovio argues that it is unfair for the government to seek extradition five years after the investigation.[4] Such a delay, however, does not present an arguable due process claim. *See Matter of Burt,* 737 F.2d 1477, 1487 (7th Cir.1984). Bovio additionally argues that "the government's subsequent effort at extradition was not pursuant to any new evidence but was a blatant attempt to correct the deficiencies in an investigation which had been completed five years previously. The 'new evidence' ... was nothing but an unsubstantiated rehash of the evidence previously found insufficient." (Apr. 8, 1992 Br. at 14–15.)

In her initial decision denying certification, the magistrate judge stated:

The detective inspector's statement bears no indication that it was made under oath. The document purports to describe the activities constituting the offense based on "depositions" made by three named witnesses. The statements in the document are not attributed to any particular witness, nor does the document state how the detective inspector derived

4. The statute of limitations for the crimes Bovio is charged with is apparently fifteen years.

the information, i.e., from the written depositions, or from conversations with the witnesses or with other police officers, so the sources of the particular accusations or evidence are not clear. (Jan. 11, 1991 Decision at 5.) The government, as any other party, has the right to move for reconsideration of a court's decision.[5] As noted by the magistrate judge, Lindholm's statement cured the deficiencies she had previously noted in Lindholm's initial statement. (*See* Apr. 3, 1991 Decision at 3–4.)[6] As discussed above, we agree with the magistrate judge's finding of probable cause upon reconsideration. Bovio presents no facts which otherwise indicate that his due process rights were violated.

We affirm the district court's conclusion that the magistrate judge properly certified Bovio for extradition.

---

5. The government also is permitted to file multiple extradition requests against the same individual. *Quinn v. Robinson,* 783 F.2d 776, 786 n. 3 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986); *Ahmad v. Wigen,* 910 F.2d 1063, 1065 (2d Cir.1990). Bovio's attorney acknowledged this fact during the November 10, 1992 oral argument.

6. Bovio's attorney also admitted during oral argument that Lindholm's statement which was submitted on reconsideration cured the attribution problems initially noted by the magistrate judge.